## PEOPLE'S MUTUAL EQUITABLE FIRE INSURANCE COMPANY, petitioners.

Sums voluntarily paid to a mutual insurance company by its members, upon an assessment which is subsequently adjudged to be illegal, with interest thereon, may be treated by the company as just claims against it, within the meaning of *St.* 1863, *c.* 249, and may be included as such in making a new assessment.

A sum equal to one third of the whole amount of the just claims against a mutual insurance company was added for overlay, in making an assessment upon the members, and the assessment was sustained; although such just claims were chiefly for sums voluntarily paid upon an assessment which was subsequently adjudged to be illegal.

If, in making an assessment upon the members of a mutual insurance company, after a former assessment has been adjudged illegal, it is found that, two years before, a large debt was due from the company, and that many of the members who paid the sums assessed upon them by the illegal assessment have become exempt from a new assessment by the limitation of time, so that, if the debt should be assessed upon policies which were in existence at the time when the items of which it was composed accrued, and which still continued liable to assessment, there are not premium notes to a sufficient amount to pay them all, the whole amount of such debt may be taken as a unit, and assessed upon all the policies which were then outstanding, in proportion to the time of their existence and the amount of their premiums.

In making such assessment for just claims which have accrued within two years, the aggregate of the whole net expenses, and of the sums received in payment of the illegal assessment, during each year, may be divided by twelve, to ascertain the average amount to be raised for each month during that year; to which may be added the amount of losses in each month when losses occurred; and the sum thus ascertained may be taken as the sum to be raised for each month, and may be assessed upon all the policies in existence during that month, in proportion to the amounts of the premiums paid therefor, which were applicable to that month.

A refusal to pay an illegal assessment for thirty days after demand will not render void a policy of insurance issued by a mutual insurance company, or defeat a subsequent assessment upon the same, although the by-laws authorize the directors to terminate the same in case of a refusal to pay assessments, and the directors when making the assessments voted that any policy, the holder of which should refuse to pay any assessment for thirty days after a demand on him, should be void.

PETITION setting forth that the People's Equitable Mutual Fire Insurance Company, a corporation established at Taunton, have made an assessment upon the members thereof who were liable to assessment on the 1st of January 1864, under *St.* 1863, *c.* 249, and praying the court to examine the same, the necessity thereof, and all matters connected therewith, and to ratify, amend or annul the same, or to order that the same be made as law and justice may require.

The case was referred to Charles Allen as auditor, who reported the following facts:

In April 1861, the directors of the company made an assessment upon the policy holders then liable to assessment, amounting to . . . . . . . . . $11,414.10
and in June 1862, they made another assessment, amounting to . . . . . . . . 11,732.66

$23,146.76

Upon these assessments the company, through its agents, collected and received the sum of $17,808.63, all of which, so far as appeared, was voluntarily paid. This left a balance remaining uncollected, of those assessments, of $5338.13. The above assessments, however, were both adjudged by this court to be illegal and invalid, in an action brought by the company against George H. Babbitt, which was determined at October term 1863. See 7 Allen, 236.

On the 1st of January 1864, the condition of the company was as follows: Assets, $1498.42; Liabilities, notes, various expenses, losses claimed, &c., 3905.00; leaving a deficit of $2406.48. In addition to the above liabilities, the company had received upon the assessments which were adjudged invalid, the sum, stated above, of . . . . . . $17,808.63
Interest on the same to January 1, 1864, as computed 1794.97

$19.603.60

The company contended that the amount of these collections, with interest, should be considered as "just claims" against them, within the meaning of the statute, and that an equal and just assessment upon all who in equity are liable to assessment, and ought to pay the debts of the company, could be obtained in no other way.

The amount of deposit notes on January 1, 1864, was $127,360.73. Upon January 1, 1864, a statement of the condition of the company was prepared, showing the above facts, and stating, as the net amount of the deficit, $22,010.08, to which was added, for overlay, $7336.69, making a total result of $29,346.77.

At said meeting, on January 1, 1864, it was voted, " That whereas the just claims against the company exceed its funds, an assessment of $29,346.77 be laid upon all the members of the company liable to assessment, in proportion to their premium and deposit," according to *St.* 1863, *c.* 249, § 4, and that the necessary steps should be taken to have said assessment examined and established by the supreme judicial court. In pursuance of these votes the assessments now sought to be established were made.

A list of the policies issued by the company, upon which the present assessments are made, was prepared, by which it appeared that nearly all of the policies were issued for seven years, and they have been and are constantly expiring at short intervals.

The first assessment, determining what each policy holder must equitably pay or receive, in case of withdrawal from the company, and having his policy cancelled — amounting in all to the sum of $29,346.77 — was made thus :

A list was prepared of all the policies which were outstanding on the 1st of January 1862, and of all those which had been issued since that time, showing the dates when and the length of time for which the same were issued, and the amounts of premiums paid upon them. All of these policies were included in the assessment.

It was found that on January 1st 1862 a large debt was due from the company, amounting to over $8000 ; and that many of those who had paid the sums assessed upon them by the two former assessments were, on the 1st of January 1864, exempt from assessment, under Gen. Sts. *c.* 58, § 54, by the limitation of time ; so that, if this debt should be assessed upon policies which were in existence at the time when the items of which it was composed accrued, and which still continued liable to assessment, there were not premium notes to a sufficient amount to pay them all. Some of these items of indebtedness were greater than the amount of premium notes remaining liable to assessment for them, and which were given as far back as the time when the indebtedness arose. The whole amount of the debt of the company existing on the 1st of January 1862 was

therefore taken as a unit, and assessed upon all the policies which were then outstanding, in proportion to the time of their existence and the amount of their premiums.

After that, the time was divided into months, in order to assess the proper sums for each month upon the policies in existence during that month.

The sum to be raised for each month was ascertained thus: The aggregate of the whole net expenses of the year 1862, (for example,) and of the sums received for assessments during that year, was divided by twelve, and the quotient, $1257.53, was considered as the average amount to be raised for each month during that year. To this was added the amount of losses, in each month when losses occurred. The same process was repeated for the next year.

The sum upon which the assessment should be made for each month, in order to raise the sums ascertained as above, was arrived at thus: The amount of the whole premium paid upon each policy, outstanding in any month, was divided by the whole number of months for which the policy was issued. In case a policy was issued or terminated during any of the months in question, it was included or rejected, according as it continued for more or less than one half of the month. Then the aggregate of these items was taken as the whole amount of premiums applicable to each particular month.

The amount belonging to each policy for each month was then determined by the following ratio: As the whole amount of premiums paid, which were applicable to any month, is to the whole amount to be raised for that month, so is each person's premium paid, which was applicable to that month, to the amount to be assessed upon him for that month.

The aggregate of the amounts thus obtained for each month during which each policy was in force was taken as the sum belonging to each policy for the time after January 1, 1862. This, of course, was added to the amount ascertained in the manner heretofore described as belonging to each policy in respect to the debt existing on the 1st of January, 1862; and the result gives the amount of the first assessment upon each policy holder.

Although in establishing the ratio policies were included or rejected, according as they continued for more or less than one half of the month, (as above described,) yet in applying the ratio the aliquot parts of a month were regarded. Thus, if a policy was issued or terminated in any of the months in question, the third term of the ratio was the amount of the premium paid by each person, which was applicable to that portion of the month during which his policy was in existence. So if there was a special loss in any month, in which policies were issued or expired, such loss was not assessed upon policies which expired before or were issued after such loss occurred.

The variation of expiring or newly issued policies, as used above, in establishing the ratio, could only be very slight, from the result to be reached by a computation in detail of the length of each particular policy. According to the testimony of Mr. Wright, (insurance commissioner,) who made the computations, it would affect the ratio only in the third place of decimals; and the result, in determining the amount to be assessed upon each policy, would be varied only by mills. This testimony was not controverted.

Among the by-laws of the company are the following articles:

"ART. 7. If, in the opinion of the directors, the continuance of any risk is unequal or injurious to the company, or in case of refusal to pay assessments, they may terminate the same by giving ten days' notice thereof in writing, signed by the secretary, either by mail or personally, to the insured, provided such termination of the risk shall not affect the validity of the policy or note so far as respects past dues.

"ART. 18. Each person insured shall be liable for his proportion of all losses and expenses of the company until he cause his policy to be discharged, and such proportion of losses and expenses paid, notwithstanding he may, by some act or neglect, have rendered his policy void against the company; he shall also be entitled to a dividend at the expiration of his policy, if there are funds in the treasury."

George H Babbitt, who held various policies dated at various

times from 1857 to 1863, and running for seven years, was included in both of the assessments which were adjudged to be illegal, and has paid nothing thereon, although due demand was made upon him, and notice given of the above vote, by a circular of the company dated June 28th 1862.

Upon these facts, the case was reserved by the chief justice for the determination of the whole court.

*J. E. Sanford,* for the petitioners, cited Gen. Sts. c. 58, §§ 48, 54; Sts. 1862, c. 181, §§ 1–3; 1863, c. 249, §§ 3–5; *People's Ins. Co.* v. *Allen,* 10 Gray, 297, 300; *Fayette Ins. Co.* v. *Fuller,* 8 Allen, 27, 34; *Marblehead Ins. Co.* v. *Underwood,* 3 Gray, 210; *New England Ins. Co.* v. *Belknap,* 9 Cush. 147.

*E. H. Bennett,* for certain policy holders. 1. The sums paid upon the illegal assessments were voluntary payments, and could not have been recovered back by a suit at law. *Benson* v. *Monroe,* 7 Cush. 131. The language of the statute, in speaking of just claims, means legal claims. There is no other practicable line of distinction, to ascertain what claims were intended. Certainly, the interest could not be considered as just claims, until after a demand of repayment of the principal. 2. The amount allowed for overlay was excessive. Only a small portion of the alleged deficit remained to be collected. The great bulk of it was already in the company's hands, to be accounted for, in any event, simply by way of set-off to the new assessment. 3. The mode of assessment was not proper. The assessment should have been laid on all members, in proportion to their premium and deposit. But the amount of the debt existing on the 1st of January 1862 was assessed upon the policies then outstanding, and not upon those outstanding when the assessment was laid. If the policies outstanding on the 1st of January 1864, although issued after January 1st 1862, were not liable for debts created prior to the earlier date, then how could policies outstanding at such earlier date be assessed for debts, a portion of which were contracted before the policies were issued? 4. If the time of the existence of the earlier policies was a proper element to be considered, why should it not also be taken into account in assessing upon the later policies? 5. Babbitt is

exonerated from liability by the vote of the company, declaring his policies void.

DEWEY, J.   This is a petition in the nature of a bill in equity, setting forth that the directors of the People's Equitable Mutual Fire Insurance Company have made certain assessments upon the members, and asking this court to examine the same, the necessity thereof, and all matters connected therewith, and to ratify, amend or annul the same, or to order the same to be made as law and justice may require.   This proceeding is instituted under the provisions of *Sts.* 1862, *c.* 181, and 1863, *c.* 249.   In pursuance of § 3 of the statute last cited, the subject of this application was referred to an auditor, who, after due notice to all parties interested, has heard the same, and made a full report, clearly presenting the facts in relation to the assessment, and all questions arising thereon are now properly before us.

The first objection taken to this assessment is that it is illegal, in that it includes, in the sum assessed, the sum of $17,808.63 for moneys which the company had received from its members upon certain previous assessments, which have been adjudged by this court invalid.   The sum thus received from a portion of its members upon an illegal assessment, which another portion of the members treated as such, and refused to pay, in the opinion of the directors furnished a just claim against the company in favor of those who had paid the same; and for this purpose, and that they might place all the members upon an equal footing in bearing the common burden of discharging the liabilities attached to their membership, the directors have included that amount in the proposed assessment.

On the part of the respondents, it is said that these payments were voluntary, not made under a warrant of distress or process of law by which they or their property could have been taken without a day in court, and therefore that the same constitute no just claim against the company.

Had these members who have thus paid these sums instituted a suit at law to compel the repayment of the same, and had the corporation thought proper to set up that defence, it might

probably have availed them. But it. is a different question whether the corporation may not voluntarily assume a liability to refund this money thus received under an illegal assessment. Such recognition and a vote to reassess a town, under similar circumstances, was decidedly approved of by this court in *Nelson* v. *Milford*, 7 Pick. 18, and the right to vote and assess a new tax to cover such illegal assessments was held to be unquestionable. In the case of *People's Ins. Co.* v. *Allen*, 10 Gray, 300, the principle seems to have been directly sanctioned, that a new assessment might be made when the directors subsequently became satisfied that the previous assessment was illegally laid ; provision being made in the new assessment that those who had paid the previous one should be credited with that amount. This is precisely what is proposed to be done here. As it seems to us, there is no valid objection to including in the assessment the sum of $17,808.63 for this purpose.

The next objection taken is to so much of the proposed assessment as embraces the interest on the sums thus paid, to the 1st of January 1864. Here again the inquiry is not whether the payment of such interest could be enforced at law, but whether the company may not justly and legally assume, by their voluntary act, to pay to those from whom they have received money to which they had no legal right, not only the principal sum thus received, but also the interest thereon. The company, and through it all the members, have had the benefit of the use of the money of a portion of the members, and have applied the same to discharge the obligations of the company, and it seems no more than just to those who have advanced their money for the common benefit that they should recover the same, with the ordinary interest that would accrue thereon. We see no reason why the company may not voluntarily assume this obligation, and make it a part of the just claims due from them.

The item embraced in the proposed assessment of $7336.69 for overlay is more questionable, in reference to the proper amount to be added for this purpose. The sum thus assessed is designed to discharge the expenses of making the assessment and collecting

the same, and of continuing the necessary officers requisite to effect that purpose, as well as to cover all deficiencies by reason of inability to collect a portion of the assessments. The sums required for the latter purpose will vary in different companies, and depend upon circumstances best understood by the directors of each company. The practical result of such assessments we suppose has been, that the sums usually assessed have proved insufficient to produce the amount that was required to discharge the claims against the company. In the peculiar circumstances of the present assessment, the same being to a considerable extent an assessment to cover the previous illegal assessments, and the practical operation of it being that the members who have heretofore paid their proportion of such illegal assessment will be credited with the amount so paid upon the new assessment, and thus a very considerable portion of the amount of the new assessment being already in the hands of the company, it is urged that a less sum for overlay than in ordinary cases would be proper. To this it is answered that the payments already thus advanced were by those prompt and solvent persons who may always be expected to pay, and for whose failure no overlay is ordinarily required, while a considerable amount must be assessed to those who paid nothing on the former assessments, and from whom nothing is to be expected.

In the opinion of the court, the sum proposed to be thus added to the amount of the assessment may be properly so added.

It is then said that the mode of assessment was not proper. It is objected that the debt due from the company on January 1st 1862, of over $8000, was assessed only upon such policies as were outstanding at that date, not including subsequent ones which were outstanding on January 1st 1864, when this assessment was made.

The reason for thus assessing this sum upon those who were policy holders on the 1st of January 1862, we suppose, was to comply as far as practicable with the requirement to assess forthwith, after an ascertained loss or liability. The purpose is

to assess those policies which are in existence when the liability accrues. That can only be approximately reached. The directors finding that there was an ascertained liability of $8000 existing against the company on January 1st 1862, and that it was impracticable to assess this amount if strictly confined to policies which were in existence at the time when the items of which it was composed accrued, adopted, as the nearest practicable approximation to it, the present mode of assessing that sum upon all the policies outstanding on January 1st 1862, in proportion to the time of their existence and the amount of their premiums.

In respect to the losses accruing after January 1st 1862, no cause existed for a departure from a much nearer approximation to assessing in each case the losses upon the policies then in existence. We have repeatedly held that the law does not require, nor is it commonly practicable, that entire precision should exist as to this. A rule which shall substantially accomplish this object is all that is required. *People's Ins. Co.* v. *Allen*, 10 Gray, 297.

The mode adopted in the present case in computing the assessments made for liabilities accruing after the 1st of January 1862 is, in the opinion of the court, a sufficient compliance with the statutes, and this assessment thus made may well stand.

A question was raised as to certain policies issued to George H. Babbitt; and it was contended that these policies were not subject to any assessment for losses after the time when his policies were declared void by the company on account of his refusal to pay assessments. A by-law of the company gave such power to the directors in case of a refusal to pay assessments. But this necessarily applies only to the case of legal assessments. The previous assessments were not such. Babbitt's refusal to pay them did not terminate his policies Had a loss by fire occurred on any of them after June 28th 1862, the circular of the company declaring the policy void, if the party refused to pay them, would have been held a nullity. On the other hand, as he retained his full rights as a member, he must take the corresponding liability of assessment for losses. We

find nothing in the report that shows that the policies held by Babbitt were erroneously assessed.

The result is, that this assessment thus submitted to the court is ratified and confirmed, and a decree to that effect is to be entered.